Argued May 2, reversed July 31, petition for rehearing denied
September 24, 1963

# ROGERS CONSTRUCTION CO. *v.* HILL, PUBLIC
# UTILITY COMMISSIONER
384 P. 2d 219

*Donald W. McEwen,* Portland, argued the cause for appellant. On the briefs were Cake, Jaureguy, Hardy, Buttler & McEwen and John R. Faust, Jr., Portland.

*John F. Weisser,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, and Lloyd G. Hammel, Assistant Attorney General, Salem.

Before MCALLISTER, Chief Justice, and PERRY, O'CONNELL, DENECKE and LUSK, Justices.

DENECKE, J.

Interpreting the Oregon Highway Use Tax is the problem. The plaintiff road builder contends that the movement of its mobile construction equipment from job to job over public highways is not subject to this tax. The Public Utility Commissioner and the trial court held to the contrary.

The equipment consists of earth-movers, end-dumps, tractors and other similar rubber-tired equip-

ment used in highway construction. Movement within a construction project is not in issue as the statute exempts a highway contractor during the construction period. ORS 767.325(1). It is only movement from project to project that is involved.

The Highway Use Tax applies to all motor carriers,—common, contract and private. ORS 767.325(1). Plaintiff admits it is a "private carrier" as that term is defined by statute. ORS 767.015. The tax is assessed upon the basis of weight-miles travelled. ORS 767.330. It applies to every "motor vehicle." The crucial statute is that defining "motor vehicle." ORS 767.010(5) defines the term for the entire Motor Transportation Code. The Highway Use Tax is a part of such code. The definition is as follows:

> " 'Motor vehicle' means any self-propelled or motor-driven vehicle, or any train or combination of vehicles, used *or capable of being used* upon any public highway in this state in the transportation of persons or property, * * *." (Emphasis added.)

The italicized words, "or capable of being used," were added by ch 420, § 2, Oregon Laws 1959. It is this addition that causes this litigation.

The Commissioner found that plaintiff's vehicles had never transported persons or property except on construction projects. Plaintiff asserts that none of its vehicles could lawfully transport persons or property on Oregon public roads for the reason that they were oversize and overweight. Defendant did not contravert this assertion and the testimony of a supervisor of the Oregon State Highway Department which licenses special movements on the highways supports the contention. The equipment was not designed to transport persons or property other than the trans-

port of property as a part of construction work, i.e., carriage of dirt or rock, etc.

The position of the Commissioner is that whether or not these vehicles have or can lawfully transport persons and property is immaterial. The vehicles physically are capable of transporting persons or property and that he contends is all the statute requires for vehicles to be subject to the tax. The principal witness, a supervisor in the Commissioner's office, stated plaintiff's vehicles "would [be] capable of carrying—to be absurd—to carry a crescent wrench."

The legislative history of the 1959 amendment is of no assistance. Plaintiff states its purpose was to clearly establish the Commissioner's right to assess the tax upon trips by vehicles which were travelling empty, but which ordinarily transport persons or property. This may be; however, there is no substantiation in the record.

The Commissioner acted in accordance with his general administrative memorandum promulgated as a result of the 1959 amendment. The memorandum provides that "all movements of empty vehicles capable of carrying a load" shall be taxed; the only exemption, other than those stated in the statute, is of vehicles which had never transported property. This exemption did not apply to plaintiff, as its vehicles transported property on construction projects.

The action of the Commissioner is reviewable pursuant to ORS 756.580. The scope of judicial review is not stated in the statute. The Commissioner concedes the question is one of law, i.e., interpretation of a statute. However, he contends that if the Commissioner's order has "warrant in the record" or a "reasonable basis in law" it must be affirmed although the

court may, if initially determining the issue, have decided it differently.

The above-quoted phrases have been used by the United States Supreme Court in affirming administrative determinations involving what are usually termed "law," as distinguished from "fact," questions. *Rochester Tel. Corp. v. United States,* 307 US 125, 59 S Ct 754, 83 L ed 1147 (1939); *Board v. Hearst Publications,* 322 US 111, 64 S Ct 851, 88 L ed 1170 (1944). However, as Professor Davis pointed out, in other cases the court has ignored these same phrases and substituted its own judgment and overruled administrative orders which appeared to have "a warrant in the record" or a "reasonable basis in law." 4 Davis, Administrative Law Treatise, § 30.06.

A former chief counsel for the Oregon Public Utility Commissioner wrote in 1 Willamette Law Journal, 222-223 (1960): "Where pure questions of law, for example, those involving the proper construction of statutory language, are involved, no presumption of regularity is accorded PUC [Public Utility Commissioner] findings except in the narrow area of so-called regulatory 'expertise.'"

■ There are certain questions which analytically may be designated "questions of law" in which the experience of administrative personnel in the particular field is of material assistance in arriving at a decision. When this type of question is judicially reviewed the court should give deference to the administrative interpretation. The amount of deference will vary depending upon the apparent degree of reasonableness of the administrative decision and the degree to which the problem involves knowledge peculiar to an industry, business, etc. *Pennsylvania Co. v. United States,* 236 US 351, 35 S Ct 370, 59 L ed 616 (1915),

is an example of this. The Interstate Commerce Act prohibited any carrier from giving any undue preference or advantage to any person. The question was whether or not a practice of the railroad was the giving of an undue preference or advantage. The Interstate Commerce Commission found it was an undue preference. The court affirmed, stating that it was a question for decision by the commission.

■ This case, however, does not present a question in which knowledge and experience in the industry affords any advantage. We find it to be that kind of a question of statutory interpretation which a court, by reason of its being constantly presented by such problems, is at least as capable of deciding as an administrative agency.

■ Two principal considerations lead to the conclusion that the tax is not applicable to plaintiff's vehicles. The tax is part of a general statute regulating motor carriers transporting either their own property or the property of others on the state's highways. The declaration of policy in the Motor Transportation Code states: "The business of operating as a motor carrier of persons or property for hire upon the highways of this state is declared to be a business affected with the public interest, and that regulated competition is desirable when it is deemed to be in the public interest." ORS 767.020. The vehicles involved have not and cannot be operated for the transportation of property on the highways. True, the Motor Transportation Code also has as a stated purpose the reduction of wear of the highways and safety on the highways. Plaintiff's vehicles present as much of a wear and safety problem as vehicles transporting property or persons. However, the Motor Transportation Code has only attempted to attack the highway

wear and safety problems as these are affected by vehicles connected with the business of transporting property or persons.

■ Secondly, the Commissioner's ruling and the Administrative Memorandum upon which it is based make every motor vehicle subject to the tax unless the statute specifically exempts them or unless they are in the minute class exempted by the memorandum. Under the Commissioner's interpretation of "capable of being used * * * in the transportation of persons or property" all motor vehicles are so capable. However, it seems obvious that the entire Motor Transportation Code and the definition of motor vehicle in the code are not intended to be applicable to all motor vehicles but only to those having a connection with the transportation of persons or property.

An analogous problem was presented the Washington court in *Mason-Walsh-Atkinson-Kier Co. v. Case,* 2 Wash2d 33, 97 P2d 165. The statute originally provided that those paying a tax on purchases of fuel were to be reimbursed for the tax paid except for taxes paid upon fuel used "in motor vehicles operated or intended to be operated upon the public highways." The law was changed and reimbursements were authorized except for fuel used in motor vehicles "*capable* of being operated upon a public highway." (Emphasis added.)

The plaintiffs were constructors on Grand Coulee Dam and used huge trucks especially designed for the job. The trucks were oversize and overweight. The state issued special permits to enable them to be driven on the highway from their place of construction, Seattle, to Grand Coulee, several hundreds of miles away. Therefore, the tax collector argued the trucks are obviously "capable of being operated upon

a public highway." A majority of the Washington court held "operate," as used in the statute, ''contemplates normal, functional operation'' and, therefore, these trucks were not "capable of being operated upon a public highway."

We hold that these particular construction vehicles are not "motor vehicles'' as that term is used in the Oregon Highway Use Tax.

Reversed.