Anthony JACOBSKY

v.

C. D'ALFONSO & SONS, INC. and/or Hart-
ford Accident & Indemnity Company.

Supreme Judicial Court of Maine.

June 2, 1976.

Monaghan & Perkins by Diantha A.
Carrigan, Stephen L. Perkins, Wheeler &
Pomeroy by David C. Pomeroy, Portland,
for plaintiff.

Mahoney, Robinson, Mahoney & Nor-
man by Lawrence P. Mahoney, Robert F.
Hanson, Portland, for defendants.

Before DUFRESNE, C. J., and
WEATHERBEE, WERNICK and ARCH-
IBALD, JJ.

WEATHERBEE, Justice.

On July 3, 1973, after hearing on the
employer's earlier petition, the present peti-

tioner-employee (who had been receiving compensation for total incapacity as a result of a work-related injury to his thoracic cage) was found to be only 50% incapacitated and compensation was ordered reduced in accordance with this finding.

On October 30, 1973 the petitioner-employee brought this petition for review of incapacity (39 M.R.S.A. § 100) asserting that his incapacity had increased and asking that his compensation be increased correspondingly to reflect a total incapacity.

At hearing on this petition, the petitioner presented Mr. Haskell, a Vocational Rehabilitation Counselor of the Maine Bureau of Rehabilitation, who testified that the petitioner (who had earlier been referred to the Bureau by the Maine Employment Security office) had reapplied in August of 1973. Mr. Haskell had then interviewed the petitioner and, after studying petitioner's file, had concluded that circumstances —petitioner's disabilities, his lack of transferable skills other than general physical labor, his meager education, his age of 49, his lack of motivation and the limited amount of physical work available for a partially incapacitated man—made the petitioner ineligible for vocational rehabilitation. Petitioner had never worked at anything except heavy physical labor. He left school in about the seventh grade.

Petitioner, himself, testified that since the previous hearing on July 3, 1973 his physical condition had not changed. He was somewhat inarticulate in the English language. He described his unsuccessful efforts to find employment within his capacity as consisting of

(1) Three visits at the Maine Employment Security office in three successive weeks.

(2) The one interview with Mr. Haskell about August of 1973.

(3) He kept in contact with Mr. Haskell after that to the vague extent that "My wife always called up [Mr. Haskell] to find out if there was any work for me, find something for me and there was nothing for me."

(4) He said, "I asked questions, somebody I know of if they know of any work for me and they said, 'You can't work nowhere.' . . . Different friends of mine."

The petitioner said he had not contacted any employers directly, because

" . . . [I]f I ever did go someplace they ask me to make out a form. I don't know how to do that, and they ask me what kind of conditions and I tell them and they would say, 'I don't need you', you know."

The petitioner's injuries were received in August of 1968. Since then he had worked eight or nine months at one job which he said he had left in February, 1972 because the exertion caused pain in his injured ribs. No medical testimony was heard at the latest hearing as the circumstances of the petitioner's physical condition had been fully presented at the previous hearing at which time he had been found to be only partially incapacitated. It was agreed that it was unchanged since that time.

The petitioner contends, simply, that the impact of his partial physical disability combined with the very limited assets which he could bring into the work market makes him unemployable and, therefore, totally disabled. *See Foster v. Bath Iron Works*, Me., 317 A.2d 11 (1974).

The single *disputed* issue before the Commissioner was whether the petitioner had met his burden of proving by a fair preponderance of the evidence that he has been unable to become employed at work within the tolerance of his diminished physical capacity—more precisely, whether he had proved that

"he had used reasonable efforts to obtain the kind of work which was within the tolerance of his physical condition and

that he failed, either because employers would not hire people with such limitational capacity to do the type of work which was within the plaintiff's tolerance, or because there was no market in the area of the plaintiff's residence for restricted work of which he was capable." *Overlock v. Eastern Fine Paper, Inc.*, Me., 314 A.2d 56 (1974).

The Commissioner found that the petitioner had not made a good faith attempt at securing such re-employment.

The petitioner-appellant reminds us that in *Bolduc v. Pioneer Plastics Corporation*, Me., 302 A.2d 577, 580 (1973) we characterized the issue of reasonableness of efforts to find work as a question of fact but that we later said in *Martel v. United States Gypsum Company*, Me., 329 A.2d 392, 396 (1974) that the issue of reasonableness of efforts to find work is a mixed question of law and fact, within the area of expertise of the Commissioner, yet also reviewable by this Court on appeal.

Petitioner argues to us that in view of the language in *Martel* and of 39 M.R.S.A. § 99 which provides that the Commissioner's decision

"upon all questions of fact shall be final but whenever in a decree the commission expressly rules that any party has or has not sustained the burden of proof cast upon him, the said finding shall not be considered a finding of fact but shall be deemed to be a conclusion of law and shall be reviewable as such."

this Commissioner's decision that this petitioner had not made a reasonable effort to find work should be reviewed as a conclusion of law rather than a finding of fact, and that the Court, therefore, may substitute its judgment for that of the Commissioner.

Petitioner urges us that his appeal demands a reconsideration and clarification of our statements in *Bolduc* and *Martel*, especially in the light of 3^0 M.R.S.A. § 99.

We agree with petitioner that it is appropriate that we discuss more extensively our understanding of the manner in which this Court may review the findings of a Commissioner.

Since oral argument in this case, the opinion in *Guerette v. Fraser Paper Limited*, Me., 348 A.2d 260 (1975) has doubtless removed the uncertainty which formerly existed as to the correct interpretation of that part of section 99. In the present case, the Commissioner's findings were more specific than a mere assertion that a petitioner had failed to sustain the burden of proof which *Guerette* holds would require independent factual evaluations by the reviewing Court.

■ It is clear that a Commissioner's findings of fact are final (in the absence of fraud) if they are supported by competent evidence and reasonable inferences which may be drawn therefrom. *Crosby v. Grand View Nursing Home*, Me., 290 A.2d 375, 379 (1972); *Willette v. Statler Tissue Corp.*, Me., 331 A.2d 365 (1975); 39 M.R.S.A. § 99; *Mailman's Case*, 118 Me. 172, 106 A. 606 (1919).

■ It is equally well recognized that if the Commissioner is in error as to the law which controls his decision, the reviewing Court may substitute its understanding of the law for that of the Commissioner, *Ferris' Case*, 123 Me. 193, 122 A. 410 (1923); *Bowden's Case*, 123 Me. 359, 123 A. 166 (1924).

Although the distinction between law and fact is often clearly defined, there are frequent situations which involve other than pure fact questions and which present difficulty in defining the proper scope of judicial review. Such are the decrees of a Commissioner which, analytically, involve a two-step process of determination—first, a finding of pure facts by means of the assessment of the probative value of the evidence and, second, an evaluation of the capacity of these facts to meet a certain legally defined standard—such as, here, that

of reasonableness. This process is sometimes referred to as the assessment of primary (or evidentiary) facts and of ultimate facts (*see Woodard v. Mordecai,* 234 N.C. 463, 471, 67 S.E.2d 639, 645 (1951);[1] *Wisconsin Memorial Park Company v. Commissioner of Internal Revenue,* 255 F.2d 751 (7th Circuit 1958); 2 Am. Jur.2d Administrative Law, § 662) and other times, as in *Martel,* as mixed questions of fact and law. *See Southwestern Gas & Electric Co. v. Hatfield,* 219 Ark. 515, 243 S.W.2d 378 (1951); *Marquez v. Frisbie,* 101 U.S. 473, 25 L.Ed. 800 (1879).

We find that there is no uniformity in the treatment of such issues on appeal. *See* 4 Davis, Administrative Law Treatise, § 30.06; Davis, Administrative Law Text, ch. 30; 2 Am.Jur.2d Administrative Law, §§ 662–670. The United States Supreme Court, for example, has substituted its judgment for that of the National Labor Relations Board on the question of whether the Board erroneously found certain individuals to be "employees" (*Packard Motor Car Company v. National Labor Relations Board,* 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947)) but in *National Labor Relations Board v. Hearst Publications,* 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944) the Court refused to substitute its judgment for the Board's on a similar question, saying:

"[T]he Board's determination that specified persons are 'employees' under this Act is to be accepted if it has 'warrant in the record' and a reasonable basis in law." 322 U.S. at 131, 64 S.Ct. at 861, 88 L.Ed. at 1185.

*See also Hardin v. Kentucky Utilities Company,* 390 U.S. 1, 9, 88 S.Ct. 651, 656, 19 L.Ed.2d 787, 794 (1968) ("the area");

*Gray v. Powell,* 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301 (1941) ("a producer"); *Pennsylvania Co. v. United States,* 236 U.S. 351, 35 S.Ct. 370, 59 L.Ed. 616 (1915) ("undue preference").

In the present context the difficulty lies in recognizing the proper bounds of authority of an administrative officer who, in addition to his advantage of face to face observation of the witnesses, acquires an expertise and accumulates an experience in his limited, specialized field often more extensive than that of the judiciary. While it is frequently acknowledged that in reviewing what analytically may be called questions of law, or, more realistically, mixed questions of law and fact, the appellate court should in proper cases give weight to the conclusions of the administrative officer (*Rogers Construction Co. v. Hill,* 235 Or. 352, 384 P.2d 219, 222 (1963)), we find considerable variation in the manner in which appeals courts articulate the exercise of their deference to this expertise.

Perhaps the most workable rule to meet such questions was that stated by the Oregon Court in *Rogers Construction Co. v. Hill,* 235 Or. at 356, 384 P.2d at 222:

There are certain questions which analytically may be designated 'questions of law' in which the experience of administrative personnel in the particular field is of material assistance in arriving at a decision. When this type of question is judicially reviewed the court should give deference to the administrative interpretation. The amount of deference will vary depending upon the apparent degree of reasonableness of the administrative decision and the degree to which the

[1] ". . . Ultimate facts are those found in that vaguely defined area lying between evidential facts on the one side and conclusions of law on the other. . . . In consequence, the line of demarcation between ultimate facts and legal conclusions is not easily drawn. . . . An ultimate fact is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts. . . . Whether a statement is an ultimate fact or a conclusion of law depends upon whether it is reached by natural reasoning or by an application of fixed rules of law. . . . " (Citations omitted.) *Woodard v. Mordecai,* supra at 645.

problem involves knowledge peculiar to an industry, business, etc."

■ Applying a strictly analytical approach one would say that this Commissioner's conclusion as to the reasonableness of the Petitioner's efforts to find work consisted of, first, his finding that the Petitioner and his wife did certain things (without any assertion as to the legal consequences of these acts) and, second, his evaluation of the reasonableness of these acts under accepted principles of law. The question of reasonableness of efforts to find work is not one of an essentially legal nature in the sense that legal education or experience are essential to proper evaluation. If they were, we would consider it to be a question which the Court is "at least as capable of deciding as an administrative agency" (*Rogers Construction Co. v. Hill*, 235 Or. at 357, 384 P.2d at 222) and would feel free to substitute our judgment for that of the Commissioner. *Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). Instead, the question is one which lies in an area in which the Commissioner is expected to have a special expertise and experience and his conclusion is entitled to weight.

■ But this does not mean that a Commissioner's ultimate conclusions—even in the area of his expertise—must be accepted by the Court on review. While the standard for reviewing the ultimate conclusions is variously described,[2] they must be rejected if the Court finds that the basic findings of pure fact are not supported by competent evidence or that the ultimate conclusions themselves were arbitrary or capricious, without rational bases or predicated upon erroneous principles of law. In

short, we examine the reasonableness and legality of his ultimate conclusions with deference to his relevant expertise.

Here the Commissioner found:

"It has been established by the prior decree that Mr. Jacobsky was partially incapacitated to work and through his own medical witness, Dr. Rand, there were no restrictions in walking, standing, sitting or lifting weights under 20 pounds. The claimant had made three attempts at securing work by presenting himself at the local Maine Employment Security office and by asking the Vocational Counsellor, once through his wife after the interview. We find that this does not represent a good faith[3] attempt at securing work in line with the prior finding of a 50% partial incapacity to work.

.    .    .    .    .    .

After full consideration of all the evidence we find as a fact that the petitioner is still partially incapacitated to work in the amount of 50% . . . ."

The petitioner's testimony as to his efforts to find work were unchallenged and was apparently accepted by the Commissioner. There was sufficient competent testimony to support the Commissioner's findings of fact (*Mailman's Case*, 118 Me. 172, 177, 106 A. 606, 608 (1919)). His evaluation of those efforts had a rational basis and did not violate the accepted legal concept of reasonableness.

Our only difficulty with the Commissioner's decision comes from the language which he employed to summarize the peti-

2. *Parsons v. Board of Zoning Appeals*, 140 Conn. 290, 99 A.2d 149 (1953) ("an honest judgment . . . reasonable and fairly exercised") ; *Robinson v. Olzendam*, 38 Wash.2d 30, 227 P.2d 732 (1951) ("not arbitrary or capricious") ; *Sevcik v. Commissioner of Taxation*, 257 Minn. 92, 100 N.W.2d 678 (1959) ; *New Jersey State Board of Optometrists v. Nemiz*, 21 N.J.

Super. 18, 90 A.2d 740 (1952) ("rational or inherent relationship between the basic facts and the ultimate facts and the latter should flow logically from the former").

3. Of course, "bad faith" efforts would be unreasonable per se. We construe the Commissioner's words to mean a failure to make *reasonable* efforts.

tioner's efforts and this must be carefully examined.

■ The Commissioner found petitioner had made three visits at the local Maine Employment Security office. His reference to "Vocational Counsellor" shows that the Commissioner also had the one interview with Mr. Haskell in mind. The Commissioner speaks of the petitioner's wife calling Mr. Haskell "once" *after* the interview. The petitioner failed to say how many times his wife "would call" Mr. Haskell and, of course, the burden of proof was his. Although it seems likely that the petitioner meant that his wife called Mr. Haskell more than once, it appears from Mr. Haskell's description of his professional activities that his responsibilities were in the area of rehabilitation and vocational training and not in locating employment opportunities. The Commissioner apparently treated the occasional inquiries of friends as of little consequence. We are satisfied that even if the Commissioner had interpreted the petitioner's statement as meaning several phone calls to Mr. Haskell, his conclusion as to the insufficiency of the petitioner's efforts would not have changed. Neither would our own conclusion as to the reasonableness of his evaluation.

The entry will be:

Appeal denied.

It is further ordered that the appellees pay to the appellant $550 for his counsel fees, plus his actual reasonable out-of-pocket expenses of this appeal.

All Justices concurring.

POMEROY, J., did not sit.

DELAHANTY, J., sat at argument but did not participate further in the case.