EARTH RESOURCES COMPANY OF ALASKA, a/k/a Energy Company of Alaska, Appellant and Cross-Appellee,

v.

STATE of Alaska, DEPARTMENT OF REVENUE, Appellee and Cross-Appellant.

Nos. 5762, 5815.

Supreme Court of Alaska.

Feb. 10, 1983.

As Amended on Grant in Part and Denial in Part of Petition for Rehearing June 17, 1983.

Patrick B. Gilmore, Atkinson, Conway, Bell & Gagnon, Anchorage, for appellant and cross-appellee.

Wilson L. Condon, Atty. Gen., Juneau, and Teo C. Spengler, Asst. Atty. Gen., Juneau, for appellee and cross-appellant.

Before BURKE, C.J., RABINOWITZ, CONNOR and MATTHEWS, JJ., and SCHULZ, Superior Court Judge.*

* Schulz, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. ERCA also raises due process challenges to the Department's hearing procedures and argues that the Department did not have the requisite statutory authority to find it a unitary business.

## AMENDED OPINION

BURKE, Chief Justice.

 This case involves principles of multistate corporate taxation as set out in the Multistate Tax Compact, AS 43.19.010–43.19.050 and the Alaska Net Income Tax Act, AS 43.20.010–43.20.350 (ANITA). The central issue on appeal is whether the taxpayer was properly found to be a unitary business to which the apportionment formula of AS 43.20.065 must be applied. Additionally, the taxpayer raises questions regarding the standard of review and the burden of proof to be utilized when a taxpayer challenges the Department's application of the apportionment formula.[1]

ERCA argues that its due process protections have been violated by intradepartmental procedures which permit a hearing officer to have previously been an auditor, subject the hearing officer's decision to the review and approval of the Commissioner, and allow the Commissioner to make ultimate decisions without being present at the hearing.

First, courts reviewing the question of bias have established that bias may be asserted where the same person serves as both investigator and adjudicator in the same case. *See Wong Yang Sung v. McGrath*, 339 U.S. 33, 35 n. 1, 45–46, 70 S.Ct. 445, 447 n. 1, 451–52, 94 L.Ed. 616, 621 n. 1, 626 (1950); *S.E.C. v. R.A. Holman & Co.*, 323 F.2d 284, 286 (D.C.Cir. 1963); *Amos Treat & Co. v. S.E.C.*, 306 F.2d 260, 266–67 (D.C.Cir.1962); *King v. Caesar Rodney School Dist.*, 380 F.Supp. 1112, 1118–19 (D.Del.1974). We find no cases where due process protections have been extended to situations where an adjudicator had investigative experience in cases other than that involving the petitioner. Further, agency personnel and procedures are presumed to be honest and impartial until the petitioner makes a showing of actual bias or prejudgment. *Withrow v. Larkin*, 421 U.S. 35, 47–48, 95 S.Ct. 1456, 1464–65, 43 L.Ed.2d 712, 723–24 (1975). ERCA's disagreement with the procedures used does not suffice to establish actual bias.

Second, the Commissioner is required by statute to "hold hearings and investigations necessary for the administration of the state tax and revenue laws" and to "hear and determine appeals involving income, excise, license, or other taxes levied under state laws." AS 43.05.010(8), (9). That the combination of investigatory and adjudicatory functions under one agency head is constitutionally permissible is clear. This court held in *In Re Cornelius*, 520 P.2d 76, 84 (Alaska 1974), *affirmed*, 521 P.2d 497 (Alaska 1974), that a combination of such functions is not a due process violation. That decision was followed in *Matter of Robson*, 575 P.2d 771, 774 (Alaska 1978); *McGinnis v. Stevens*, 543 P.2d 1221, 1228 nn. 15, 16 (Alaska 1975), *modified*, 570 P.2d 735 (Alaska 1977); and *In Re Hanson*, 532 P.2d 303, 306 (Alaska 1975); *see Withrow v. Larkin*, 421 U.S. 35, 51–55, 95 S.Ct. 1456, 1466–68, 43 L.Ed.2d 712, 726–28 (1975); *Marcello v. Bonds*, 349 U.S. 302, 311–13, 75 S.Ct. 757, 762–63, 99 L.Ed. 1107, 1116–17 (1955).

Finally, due process protections do not require an agency head to hear and decide each case. The Commissioner is permitted to make intra-agency delegations and to rule otherwise would rob the Department of its effectiveness. Due process does require an administrative officer to "hear" the evidence presented at a hearing. *Morgan v. United States*, 298 U.S. 468, 478–82, 56 S.Ct. 906, 910–12, 80 L.Ed. 1288, 1293–96 (1936); *Flav-o-Rich, Inc. v. N.L.R.B.*, 531 F.2d 358, 363 (6th Cir.1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1647, 52 L.Ed.2d 358 (1977). However, to "hear" the evidence, the officer need only make an informed judgment based on the evidence received and need not be present at its presentation. *Estate of Varian v. Commissioner of Internal Revenue*, 396 F.2d 753, 755 (9th Cir.), *cert. denied*, 393 U.S. 962, 89 S.Ct. 402, 21 L.Ed.2d 376 (1968); *Southern Garment Mfrs. Ass'n, Inc. v. Fleming*, 122 F.2d 622, 626 (D.C.Cir.1941). And this court has similarly held in *Alaska Transp. Comm'n v. Gandia*, 602 P.2d 402, 405–06 (Alaska 1979).

ERCA's argument that the Department has no statutory authority to apply the apportionment formula to its activities is also without merit. First, ERCA argues that it does not come within the definition of "taxpayer" contained in AS 43.19.010(II)(3). The statute

The Earth Resources Company (ERC or "parent") is a Delaware corporation with its principal place of business in Dallas, Texas. As a diversified company, it owns and operates several enterprises directly or through subsidiary corporations. One of its wholly owned corporations is the Earth Resources Company of Alaska, Inc. (ERCA or "taxpayer").[2]

During the tax years 1974–1976,[3] ERCA filed its Alaska Corporate Net Income Tax Returns using the separate accounting method and reporting 100% of its income in Alaska. The Department rejected this accounting procedure and calculated ERCA's tax liability by applying the apportionment formula of AS 43.20.065.[4] Utilization of the formula resulted in a $371,706.00 tax deficiency.[5]

ERCA challenged the additional assessment before a full Department hearing held on November 7, 1978. The Department's ruling of September 25, 1979, rejected the taxpayer's contentions and ordered payment of the disputed tax liability. ERCA then appealed the Department's decision to the superior court. The superior court in a memorandum of decision dated January 7, 1981, ruled that substantial evidence existed to support the Department's decision and affirmed the Department's ruling. Notice

---

defines a taxpayer as "any corporation ... acting as a business entity in more than one state." ERCA asserts that because it operates in only one state, it falls outside the Department's jurisdiction. This, however, begs the central question of the appeal. If a taxpayer doing business only in Alaska is found to be part of a larger business unity which also does business outside the state, the definition of AS 43.19.010(II)(3) is met and AS 43.20.065 mandates apportionment.

Next ERCA argues that the Department is assessing a tax upon ERC's other subsidiaries and is therefore acting beyond its statutory authority. Alaska's apportionment formula, described in AS 43.19.010(IV) is:

$$\text{Alaska Net Income} = \frac{\dfrac{\text{average value Alaska property}}{\text{average value total property}} + \dfrac{\text{Alaska payroll}}{\text{total payroll}} + \dfrac{\text{Alaska sales}}{\text{total sales}}}{3} \times \text{total income}$$

---

The property, payroll and sales fractions ("factors" under the statute) are averaged and an "ideal" fraction is arrived at which reflects the degree of state connectedness of the business entity's total income. Only this fraction of the entire income is then taxed by the state. Although part of the income so taxed might have arisen from a different state according to geographical accounting methods, such taxation does not contravene constitutional limitations so long as the intrastate and extrastate activities form part of a single unitary business. *Asarco, Inc. v. Idaho State Tax Comm'n,* —— U.S. ——, ——, 102 S.Ct. 3103, 3109, 73 L.Ed.2d 787, 795 (1982). Given a proper finding of unity, application of the Alaska formula to ERC is constitutional and the Department is within its authority to so tax.

Finally, ERCA argues that if out-of-state subsidiaries are to be taxed, Valley Towing should be taxed under the "days-in-port" method of AS 43.20.071. The days-in-port method is applicable to a taxpayer, not to a subsidiary whose income factors are used to measure a taxpayer's apportionable income. As ERCA is not a marine industry with taxable values moving in and out of the jurisdiction, the assertion is groundless.

2. Until March 3, 1976, ERC owned only 83 percent of ERCA's outstanding shares. Upon the purchase of the remaining shares, the firm name was changed from Energy Company of Alaska, Inc. (ECA) to Earth Resources Company of Alaska, Inc. (ERCA). For the sake of simplicity, the firm will be referred to as ERCA or "the taxpayer" throughout.

3. The parties settled the question of deficiencies for tax year 1974 in the process of appealing to the superior court.

4. AS 43.20.065 provides that:
A taxpayer who has income from business activity which is taxable both inside and outside the state or income from other sources both inside and outside the state shall allocate and apportion his net income as provided in the Multistate Tax Compact (AS 43.19.-010–43.19.050), or as provided by AS 43.20.-010–43.20.350.

5. Taxpayer under a separate accounting method alleged that it had paid $387,295 in taxes for the years in question. However, the hearing officer concluded from the evidence at the hearing that taxpayer in fact had only paid $13,070 taxes on its total income of $2,861,841 for the tax years 1973, 1974 and 1975. Therefore, it would be misleading to conclude that merely a change in method of tax computation resulted in the increase in taxes owed by taxpayer since even under a separate accounting method, it would appear that additional taxes were owed.

of appeal to this court was filed by the taxpayer on January 14, 1981. Notice of cross-appeal was filed by the Department on February 2, 1981.

We hold that the taxpayer was properly deemed a unitary business and affirm the decision below. There is, then, no constitutional infirmity in applying the apportionment formula to the taxpayer. We hold also that the superior court erred when it applied an incorrect standard of review and burden of proof to the taxpayer. However, we have determined the errors to be harmless.

I.

We first address the appropriate standard of review required of an appellate court when it reviews the Department's application of the apportionment formula. ERCA argues that due process violations at the departmental level and "pertinent statutes and authorities" mandated that the superior court use de novo review. Because it applied a substantial evidence standard instead, ERCA argues that the court erred. As noted above,[6] the departmental procedures did not violate ERCA's due process rights. Further, the statutes and authorities ERCA relies upon are not persuasive. We do agree that the superior court erred when it applied the substantial evidence standard. We do so, however, for different reasons.

The superior court stated in its memorandum of decision that: "The test this court has applied is whether the record as a whole contains substantial evidence from which the Department could have concluded that the business was unitary in nature." The court found that: "The issue, then, is primarily factual: were ECA and Rogers & Babler ('R & B') dependent to any significant degree on the activities of ECA's parent company, Earth Resources Company ('ERC')?"

 We disagree. There are no disputed facts. The sole issue of import in this appeal is a question of law: given the undis-

puted facts, was the taxpayer properly considered a unitary business? *See Montana Department of Revenue v. American Smelting & Refining,* 173 Mont. 316, 567 P.2d 901, 907 (Mont.1977), *appeal dismissed sub nom. ASARCO, Inc. v. Montana Department of Revenue,* 434 U.S. 1042, 98 S.Ct. 884, 54 L.Ed.2d 793 (1978); *Wisconsin Department of Revenue v. Exxon Corp.,* 90 Wis.2d 700, 281 N.W.2d 94, 101–02 (Wisc.1979), *affirmed,* 447 U.S. 207, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980). Whether the appropriate rule of law has been applied to a given set of facts is a question which requires a standard of review different than the substantial evidence test, which is used in the review of questions of fact. *Jager v. State,* 537 P.2d 1100, 1107 n. 23 (Alaska 1975).

 The issue becomes, then, what standard of review must be used by an appellate court reviewing an administrative ruling applying the apportionment formula once we have determined it to be a question of law. This court has distinguished between the rational basis standard for questions of law involving agency expertise and the substitution of judgment standard for questions of law where no expertise is involved. The rational basis test may be applied in two circumstances. First, it is applied where the agency is making law by creating standards to be used in evaluating the case before it and future cases. *Galt v. Stanton,* 591 P.2d 960, 966 (Alaska 1979) (Rabinowitz, J., concurring) (citing *Weaver Brothers, Inc. v. Alaska Transportation Commission,* 588 P.2d 819, 821 (Alaska 1978)). Second, it is applied when a case requires resolution of policy questions which lie within the agency's area of expertise and are inseparable from the facts underlying the agency's decision. *Galt v. Stanton,* 591 P.2d at 966 (citing *State, Department of Natural Resources v. Universal Education Society Inc.,* 583 P.2d 806, 811–12 (Alaska 1978)). The rational basis test requires a reviewing court to consider factors of agency expertise, policy, and efficiency when reviewing discretionary decisions. *Jager v. State,* 537 P.2d 1100, 1107 (Alaska

---

6. See footnote 1, *supra.*

1975). Thus, it is a more deferential standard than the substitution of judgment standard; the court merely seeks to determine whether the administrative agency's decision is supported by the facts and has a reasonable basis in law. *Kelly v. Zamarello,* 486 P.2d 906, 918 (Alaska 1971).[7]

 The substitution of judgment standard is applied where the questions of law presented do not involve agency expertise and, thus, a court need not take the deferential stance embodied in the rational basis test. *Kelly v. Zamarello,* 486 P.2d 906, 916 (Alaska 1971). The standard is appropriate where the knowledge and experience of the agency is of little guidance to the court or where the case concerns "statutory interpretation or other analysis of legal relationships about which courts have specialized knowledge and experience." *Id.* Application of this standard permits a reviewing court to substitute its own judgment for that of the agency's, even if the agency's decision had a reasonable basis in law. *See Rogers Construction Co. v. Hill,* 235 Or. 352, 384 P.2d 219, 221–22 (Or.1963).

At issue in this case is the proper interpretation of AS 43.19.010, the Multistate Tax Compact.[8] The definition of a unitary business is a judicial concept designed to limit state taxation to constitutionally permissible boundaries. *See* Hellerstein, *State Income Taxation of Multijurisdictional Corporations: Reflection on Mobil, Exxon, and H.R. 5076,* 79 Mich.L.Rev. 113, 148–49 (1980). The Department, in applying the unitary business concept to the taxpayer in this case, relied solely on past court decisions in reaching its findings. No complex tax computation or other agency-related activity was required to determine that the taxpayer was a unitary business. In fact, only a few published decisions of the Department deal with the apportionment formula and none define a unitary business. *See* Alaska Dept. of Revenue, Tax Rul. Nos. 74–1, 74–2, 74–3, 74–7, 75–4, 76–1, 76–3, 76–4.

 For these reasons, we conclude that the question whether a taxpayer's business is unitary is a question of law which does not require agency expertise for its resolution, and hold that the substitution of judgment standard of review should be applied by courts reviewing the Department's application of the unitary business concept to a taxpayer's business activity.[9] Thus, the superior court applied an incorrect standard of review in this case. This error, however, is harmless as the trial court's ruling on the question of unity was legally correct and correction of the error would not change the result. *See Morris v. Merchant,* 77 N.M. 411, 423 P.2d 606, 609 (N.M.1967); *H.T. Coker Construction Co. v. Whitfield Transportation, Inc.,* 85 N.M. 802, 518 P.2d 782, 785 (N.M.App.1974).

## II.

We now address the question of whether the Department correctly applied the appor-

7. Arguably, the Department's decision here could require the application of the rational basis standard. The Department could be said to be "making law" here when it applied the unitary business definition to the taxpayer. This is especially true where there is no case law precedent for its application in this jurisdiction. Also, application of the unitary business definition to the taxpayer could be said to require policy determinations involving agency expertise inseparable from the facts underlying the agency decision.

8. The cases in which this court has applied the substitution of judgment standard also involved interpretation of statutes. *Cook v. Alaska Workmen's Compensation Bd.,* 476 P.2d 29, 32 (Alaska 1970); *Aleutian Homes v. Fischer,* 418 P.2d 769, 776–77 (Alaska 1966); *Northern Corp. v. Saari,* 409 P.2d 845, 846 (Alaska 1966). And we consider the matter of statutory construction particularly within the special competency of this court. *State v. Aleut Corp.,* 541 P.2d 730, 736–37 (Alaska 1975); *Weaver Bros., Inc. v. Alaska Transp. Comm'n,* 588 P.2d 819, 821 (Alaska 1978); *see Montana Dept. of Rev. v. American Smelting & Refining,* 173 Mont. 316, 567 P.2d 901, 907 (Montana 1977), *appeal dismissed sub nom. ASARCO, Inc. v. Montana Department of Revenue,* 434 U.S. 1042, 98 S.Ct. 884, 54 L.Ed.2d 793 (1978).

9. The Wisconsin Supreme Court also chose not to apply the rational basis test to this question. *Wisconsin, Dept. of Revenue v. Exxon Corp.,* 90 Wis.2d 700, 281 N.W.2d 94, 101–02 (Wisc. 1979), *affirmed,* 447 U.S. 207, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980).

tionment formula of AS 43.20.065 to ERCA. ERCA alleges that application of the formula in this case violates the Due Process and Commerce clauses. The question whether an apportionment formula in general [10] and Alaska's apportionment formula in particular [11] violate the Due Process and Commerce clauses has been answered elsewhere. The only constitutional question before us is whether or not the taxpayer was properly considered a unitary business, thereby rendering the apportionment formula applicable.

"As a general principle, a state may not tax value earned outside its borders." *Asarco, Inc. v. Idaho State Tax Commission,* —— U.S. ——, ——, 102 S.Ct. 3103, 3109, 73 L.Ed.2d 787, 794 (1982). However, with multistate businesses, it may be impossible to attribute certain income to a particular state by use of a geographical accounting method. Such accounting may fail to account for contributions to income resulting from functional integration, centralization of management and economies of scales. These factors of profitability arise from the operation of a multistate business as a whole and therefore such income does not have a single identifiable source. *Mobil Oil Corp. v. Commissioner of Taxes of Vermont,* 445 U.S. 425, 438, 100

S.Ct. 1223, 1232, 63 L.Ed.2d 510, 521 (1980). In order to segregate this type of income according to its source and to avoid multiple taxation, states have developed apportionment formulas. These formulas attribute an appropriate fraction of the total multistate business income to the taxing state.[12] Hellerstein, *State Income Taxation of Multijurisdictional Corporations: Reflections on Mobil, Exxon, and H.R. 5076,* 79 Mich.L. Rev. 113, 117 (1980). It is only when these " 'factors of profitability' . . . exist and evidence the operation of a unitary business, [that] a state can gain a justification for its tax consideration of value that has no other connection with that state." *F.W. Woolworth Co. v. Taxation and Revenue Department,* —— U.S. ——, 102 S.Ct. 3128, 3135, 73 L.Ed.2d 819, 828 (1982). Therefore, a finding of unity is prerequisite to the constitutional application of Alaska's apportionment formula.[13] Although this court has previously addressed the apportionment question, we have not sought to define a unitary business.[14]

Until recently, the United States Supreme Court had provided only general guidance in the task of developing criteria for determining the existence of unity. It had not committed itself to any particular

**10.** *Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978); *International Harvester Co. v. Evatt,* 329 U.S. 416, 67 S.Ct. 444, 91 L.Ed. 390 (1947); *Butler Bros. v. McColgan,* 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991 (1942); *Illinois Central R.R. Co. v. Minnesota,* 309 U.S. 157, 60 S.Ct. 419, 84 L.Ed. 670 (1940).

**11.** *Sjong v. State, Dept. of Revenue,* 622 P.2d 967 (Alaska 1981), *appeal dismissed,* 454 U.S. 1131, 102 S.Ct. 986, 71 L.Ed.2d 284 (1982); *Alaska v. Petronia,* 69 Wash.2d 460, 418 P.2d 755 (Wash.1966), *appeal dismissed,* 389 U.S. 7, 88 S.Ct. 36, 19 L.Ed.2d 6 (1967). *See, e.g., Alaska S.S. Co. v. Mullaney,* 84 F.Supp. 561 (D.Alaska 1949); *aff'd,* 180 F.2d 805 (9th Cir. 1950).

**12.** The Supreme Court has deferred to state development of apportionment formulas in general, *Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978), and to the three factor formula in particular, *Butler Bros. v. McColgan,* 315 U.S. 501, 509, 62 S.Ct. 701, 705, 86 L.Ed. 991, 997 (1942). In so doing, the Court has recognized that "rough approxima-

tion rather than precision" is sufficient when applying such a formula. *Int'l Harvester Co. v. Evatt,* 329 U.S. 416, 422, 67 S.Ct. 444, 447, 91 L.Ed. 390, 395 (1947) (citing *Illinois Cent. R.R. Co. v. Minnesota,* 309 U.S. 157, 161, 60 S.Ct. 419, 422, 84 L.Ed. 670, 674–75 (1940)). See n. 1 for explanation of Alaska's apportionment formula.

**13.** The linchpin of apportionability in the field of state income taxation is the unitary-business principle. *Mobil Oil Corp. v. Comm'n of Taxes,* 445 U.S. 425, 439, 100 S.Ct. 1223, 1232, 63 L.Ed.2d 510, 522 (1980). If a company is a unitary-business, then a state may apply an apportionment formula to the taxpayer's total income in order to obtain a "rough approximation" of the corporate income that is reasonably related to the activities conducted within the taxing state. *Exxon Corp. v. Wisconsin Dept. of Revenue,* 447 U.S. 207, 223, 100 S.Ct. 2109, 2120, 65 L.Ed.2d 66, 81 (1980).

**14.** See footnote 11, *supra.*

approach.[15] In the absence of any specific guidance, the state courts have developed their own definitions of unity.[16] In addition, legal scholars have put forth their own definitions and have adopted or criticized judicial efforts to define the term.[17]

■ The Supreme Court, in *F.W. Woolworth Co. v. Taxation and Revenue Department,* —— U.S. ——, 102 S.Ct. 3128, 73 L.Ed.2d 819, (1982), utilized a method of determining whether or not unity exists which we now adopt. The Court noted that the relevant inquiry in determining the propriety of state taxation under an apportionment formula was "whether contributions to income of the subsidiaries resulted from functional integration, centralization of management and economies of scale." *Id.,* —— U.S. at ——, 102 S.Ct. at 3135, 73 L.Ed.2d at 827–28, (citations omitted). Noting that the existence of these "factors of profitability" evidenced the operation of a unitary business, the Court then determined the extent to which these factors existed in the case before it. Applying the same method of analysis in the case before us, we conclude that the superior court properly found ERCA to be a unitary business.

The Earth Resources Company, [ERC] the parent corporation, was incorporated in Delaware and maintains its principal place of business in Dallas, Texas. ERC is diversified and owns its various enterprises di-

**15.** For example, the court has considered as unitary those enterprises whose "ultimate gain is derived from the entire business," *Hans Rees' Sons, Inc. v. North Carolina, ex rel. Maxwell,* 283 U.S. 123, 133, 51 S.Ct. 385, 388, 75 L.Ed. 879, 905 (1931), or whose income is earned by a "series of transactions" in different states making specific allocation between states impossible, *Underwood Typewriter Co. v. Chamberlain,* 254 U.S. 113, 120, 41 S.Ct. 45, 46, 65 L.Ed. 165, 169 (1920).

**16.** State courts have conceived of a unitary business in terms of the unity of ownership, operation, and use, *Butler Bros. v. McColgan,* 17 Cal.2d 664, 111 P.2d 334, 341 (Cal.1941), *affirmed,* 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991 (1942); the interdependence of the enterprise's operating units, *Commonwealth v. Advance-Wilson Indus., Inc.,* 456 Pa. 200, 317 A.2d 642, 644–45 (Pa.1974); the centralization of corporate management or corporate personnel, *W.R. Grace & Co. v. Comm'r of Revenue,* 378 Mass. 577, 393 N.E.2d 330, 336 n. 10 (Mass. 1979); the mutual benefit that elements of the enterprise derive from each other, *Crawford Mfg. Co. v. State Comm'n of Revenue & Taxation,* 180 Kan. 352, 304 P.2d 504, 510 (Kan. 1956); the essential nature of one part of the enterprise to other parts, *Skelly Oil Co. v. Comm'r of Taxation,* 269 Minn. 351, 131 N.W.2d 632, 643 (Minn.1964); and the overall impact of the enterprise's parts on the economic performance of the whole, *Wisconsin Dept. of Revenue v. Exxon Corp.,* 90 Wis.2d 700, 281 N.W.2d 94, 104 (Wisc.1979), *affirmed,* 447 U.S. 207, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980).

A leading definition was set out by the California Supreme Court in *Edison California Stores, Inc. v. McColgan,* 30 Cal.2d 472, 183 P.2d 16, 21 (Cal.1947):

If the operation of the portion of the business done within the state is dependent upon or contributes to the operation of the business without the state, the operations are unitary; otherwise, if there is no such dependency, the business within the state may be considered to be separate.

A number of state courts have adopted similar tests for a unitary business. *See American Smelting & Refining v. Idaho State Tax Comm'n,* 99 Idaho 924, 592 P.2d 39, 46 (Idaho 1979); *Webb Resources, Inc. v. McCoy,* 194 Kan. 758, 401 P.2d 879, 886 (Kan.1965); *Square D. Co. v. Kentucky Bd. of Tax Appeals,* 415 S.W.2d 594, 599–600 (Ky.1967); *Great Lakes Pipe Line Co. v. Comm'r of Taxes,* 272 Minn. 403, 138 N.W.2d 612, 616 (Minn.1965), *appeal dismissed,* 384 U.S. 718, 86 S.Ct. 1886, 16 L.Ed.2d 881 (1966); *Ward Paper Box Co. v. Dept. of Revenue,* 638 P.2d 1053, 1055 (Mont. 1981); *Zale-Salem, Inc. v. State Tax Comm'r,* 237 Or. 261, 391 P.2d 601, 602–03 (Ore.1964); *Commonwealth v. ACF Indus., Inc.,* 441 Pa. 129, 271 A.2d 273, 280 (Penn.1970); *Wisconsin, Dept. of Revenue v. Exxon Corp.,* 90 Wis.2d 700, 281 N.W.2d 94, 100–06 (Wisc.1979), *affirmed,* 447 U.S. 207, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980).

**17.** *See* G. Altman & T. Keesling, Allocation of Income in State Taxation 101 (2d ed. 1950); Hellerstein, Recent Developments in State Tax Apportionment and the Circumscription of Unitary Business, 21 National Tax J. 487 (1968); Hellerstein, State Income Taxation of Multijurisdictional Corporations: Reflections on Mobil, Exxon, and H.R. 5076, 79 Mich.L.Rev. 113, 122, 148–51 (1980); Keesling & Warren, The Unitary Concept in the Allocation of Income, 12 Hastings L.J. 42, 47–48 (1960); Rudolph, State Taxation of Interstate Business: The Unitary Business Concept and Affiliated Corporate Groups, 25 Tax.L.Rev. 171 (1970).

rectly or through subsidiaries.[18] One of its subsidiaries is the taxpayer in this case, Earth Resources Company of Alaska [ERCA].

Until March 1976, ERCA shareholders consisted of ERC (83%) and approximately twenty Alaska residents.[19] When ERC first formed ERCA, it intended that ERCA would build a refinery in the Fairbanks area. At a time when the refinery was not yet completed and producing revenue, ERC sought a profit mechanism whereby ERCA stockholders would begin to receive dividends upon ERCA earnings. In 1973, ERCA, with the help of ERC, acquired the Anchorage paving and contracting firm of Rogers & Babler. Rogers & Babler was a very profitable division of ERCA and its operations provided most of ERCA's income during the tax years in question.[20]

■ The first criteria for determining the existence of unity under the *F.W. Woolworth Co.* test is whether the businesses are functionally integrated. In *F.W. Woolworth Co.*, the Court concluded that the parent company and its wholly owned subsidiaries were not functionally integrated. The relationship between ERC and ERCA is similar to that between Woolworth and its subsidiaries in that there is no highly integrated flow of business between the business entities such as exists in the multinational petroleum industry.[21] But there are also important differences. In *F.W. Woolworth Co.*, each subsidiary was responsible for obtaining its own financing from sources other than the parent. *Id.* at ——, 102 S.Ct. at 3136, 73 L.Ed.2d at 829. The record reveals that on several occasions ERC helped finance ERCA's business operations. The total purchase price of Rogers & Babler was $6,000,000.00. ERC enabled ERCA to come up with the $1,740,000.00 down payment by directly loaning ERCA $740,000.00 and then guaranteeing a bank loan to ERCA for $1,000,000.00. ERC also on numerous occasions acted as guarantor for various ERCA obligations including performance bonds and purchasing debts. David Shephard, ERC's treasurer and vice president, testified that ERC made available approximately four million dollars in funds to ERCA "via guarantees for direct borrowings of [ERCA]."

In addition to ERC's extensive involvement in the financing of ERCA's business

18. ERC wholly owns Delta Refining Co., which operates a refinery in Memphis, Tennessee. The crude oil it refines is purchased from mid-southern and foreign oil fields; none of the crude originates in Alaska. Approximately fifty percent of its products are purchased by Gasoline Marketers, Inc., another ERC subsidiary; none of its products are sold in Alaska. All of Delta's employees are located in Memphis and Delta reports one hundred percent of its income for state tax purposes in Alabama and Tennessee.

ERC also wholly owns Valley Towing Services, Inc. which operates tugs and barges on the Mississippi and primarily transports Delta's crude. Its offices are located in Mississippi and its employees are located in various states along the Mississippi River. Valley Towing pays income taxes on one hundred percent of its earnings in Mississippi.

Gasoline Marketers, Inc., also wholly owned by ERC, retails gasoline through approximately 250 outlets in approximately eight mid-southern states. About fifty percent of its gasoline is purchased from Delta and the rest from independent producers. None of its products originate or are sold in Alaska. For state income tax purposes, its income is allocated among the various states in which its outlets operate.

ERC also owns various mining interests through an unincorporated mining division, which engages in silver mining in Oregon, copper mining in New Mexico, and exploration in Colorado. In addition, it derives royalties from the Usibelli coal fields in Alaska.

19. The subsidiary's name was Energy Corporation of Alaska up until March 1976 when it became a wholly owned subsidiary of ERC. The name was then changed to Earth Resources Company of Alaska [ERCA].

20. Rogers & Babler produces hot gravel for road paving in the Anchorage area. The needed raw materials are acquired locally and all sales are conducted locally.

21. *Compare Exxon Corp. v. Wisconsin Dept. of Revenue,* 447 U.S. 207, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980); *Mobil Oil Corp. v. Comm'n of Taxes,* 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980) (where foreign and out of state subsidiary activities were found to be part of an integrated petroleum enterprise which locates, processes, and markets a single resource).

operations, ERC also established salary guidelines with which each subsidiary had to comply. ERC held annual management meetings which subsidiary and division officers would attend for the purpose of ensuring uniformity of pay scale, company-wide. ERC also provided a company-wide retirement plan in which salaried employees could participate.

The evidence in this case indicates that ERCA was not performing its business functions "autonomously and independently of the parent company." *F.W. Woolworth Co.,* —— U.S. at ——, 102 S.Ct. at 3135, 73 L.Ed.2d at 828. Rather, various phases of ERCA's and ERC's businesses were functionally integrated.

The second criteria, centralization of management, clearly exists under the facts in this case. Unlike the parent-subsidiary relationship in *F.W. Woolworth Co.,* where "none of the subsidiaries' officers . . . was a current or former employee of the parent," ERC and ERCA shared several officers and directors during the years in question. *Id.* at ——, 102 S.Ct. at 3136, 73 L.Ed.2d at 829. Mr. Krausse was president and director of ERCA and president-chief executive officer and director of ERC. Mr. Donachie served as vice president-treasurer and director of ERCA and executive vice president of ERC. Jules Ringer served as assistant secretary in ERCA, and as staff attorney for ERC.[22]

ERC's majority ownership interest in ERCA would also indicate that ERC in fact exercised control over the management of ERCA. In *Asarco, Inc. v. Idaho State Tax Commission,* —— U.S. ——, 102 S.Ct. 3103, 73 L.Ed.2d 787 (1982), the subsidiaries were found not to be unity with the parent corporation in spite of the parent's majority ownership interest. The court reasoned that the subsidiaries were independent and autonomous. In the case of one subsidiary, the parent corporation entered into a management agreement whereby it agreed to elect only a minority of the directors. *Id.* at ——, 102 S.Ct. at 3111, 73 L.Ed.2d at

798. In the case of another subsidiary, the parent corporation, although having the potential to elect a majority of the subsidiary's directors, voluntarily refrained from exercising any of its voting rights for the purpose of electing the subsidiary's directors. *Id.* at ——, 102 S.Ct. at 3112, 73 L.Ed.2d at 799. Neither of these factual situations exist in this case. ERC appears to have exercised its full voting rights as majority shareholder so as to elect all of ERCA's directors. That it has chosen to elect some of the minority shareholders as directors does not change the fact that those directors occupy the office by virtue of ERC's exercise of its control.

Further evidence of centralized management is the fact that the parent's chief executive officer was responsible for hiring the president of each subsidiary as a means of maintaining the parent's control over the subsidiary. In *F.W. Woolworth Co.,* the Court found significant the fact that the parent subsidiary had no department or section, as such, devoted to overseeing the foreign subsidiary operations. *Id.* at ——, 102 S.Ct. at 3137, 73 L.Ed.2d at 830. However, unlike the *Woolworth* parent corporation, which was actively involved in the same form of business as its subsidiaries (setting up retail outlets), the ERC parent corporation appears to be primarily in the business of running and overseeing its subsidiaries. Unlike the parent corporation in *F.W. Woolworth Co.* which did not prepare its subsidiaries' tax returns, ERC prepared all of ERCA's tax returns at its Dallas office. In *F.W. Woolworth Co.,* there were no company-wide management meetings, whereas ERC did hold such meetings annually for the purpose of assuring uniform pay scales throughout all of its subsidiaries. There existed a common stock purchase plan for all salaried employees and a common executive compensation plan based on performance relative to yearly goals. ERC provided some financial and bookkeeping services for ERCA, and its controller offered advice and assistance to the subsidi-

---

**22.** Messrs. Krausse, Donachie and Ringer also made up the majority of directors in ERC's

other three subsidiaries during the tax years in question.

aries. Although ERC and ERCA usually retained separate counsel, the tax challenge of ERCA and its parent was prepared by the same firm. In addition, the parent's chief legal officer provided assistance to ERCA when it hired legal counsel, issued stock or performed other corporate functions. Therefore, there is substantial evidence indicating that ERC was involved in the management of ERCA.

The third factor of the *F.W. Woolworth Co.* analysis is economies of scale. By ERC's own evidence, ERCA benefitted from various economies of scale. According to the testimony of David Shephard:

> I think there are certain economies of scale that can be derived by consolidating certain areas .... If ... an individual goes down and leases an automobile from ... a dealer, he's going to pay one price, whereas if you consolidate and get maybe a hundred and fifty individuals to go into the same place, you're going to get a better price .... Not only do you get savings in dollars ... but you also get certain services that I guess you don't place values on them .... I think there are other examples where [ERC] ... can get savings. In the cost of money, when you go to a bank and borrow money ... the larger you are ... the better the rates you're going to get .... Again that's a savings that's reflected not only on a consolidated basis, but in each one of the separate companies.

ERCA derived various benefits from ERC's ability to consolidate the subsidiaries and gain economies of scale. Financing could be gotten with ERC's help at lower rates. ERC was able to provide its subsidiaries with an umbrella insurance coverage for health and life insurance.[23] ERC also had an auto leasing policy which covered all of the subsidiaries. In fact, in recognition of the value of these services and economic benefits which ERCA derived from its parent, a management fee was paid by ERCA to ERC in the amount of approximately $150,000.00 a year.

In *F.W. Woolworth Co.*, the Supreme Court, utilizing the foregoing test concluded that the parent corporation was not in unity with its foreign subsidiaries. Utilizing the same test, we reach the opposite conclusion with respect to the parent ERC and its subsidiary ERCA. ERCA received contributions to its income which resulted from its functional integration with ERC, the centralization of management by ERC and the economies of scale created by ERC consolidating the needed services of all its subsidiaries into single requirements. Since these forms of income cannot be attributed to any particular geographical source, the apportionment formula may constitutionally be used to assess ERCA's tax for the years in question.[24] The superior court's ruling below, therefore is affirmed.

### III

■ It remains for us to address the Department's cross-appeal seeking clarification of the burden of proof a taxpayer must bear when challenging the Department's application of the apportionment formula.

---

**23.** Testimony by Mr. Shephard at Administrative Hearing:

> Q: Well, are there any other fringe benefits that ....?
> A: Oh, you have the major medical plans and dental plans and accidental death ... they cover all of the employees of [ERC] and its subsidiaries. Again, obviously there's economies of scale that ... rule that.

**24.** It is ERCA's burden to establish that the income of ERC's other subsidiaries should not be included by demonstrating that the other subsidiaries are not in unity with ERC and ERCA. *Exxon Corp. v. Wisconsin Dept. of Revenue*, 447 U.S. 207, 224, 100 S.Ct. 2109, 2120, 65 L.Ed.2d 66, 81 (1980); *Asarco, Inc. v.*

*Idaho State Tax Comm'n,* —— U.S. at ——, 102 S.Ct. at 3111–12, 73 L.Ed.2d at 797–98. ERCA has not shouldered this burden. The record demonstrates ample involvement by ERC in the business affairs of its other subsidiaries to justify the conclusion that there is functional integration and centralization of management as to these subsidiaries. The same economies of scale which benefit ERCA, likewise benefit the other subsidiaries. Because ERCA has failed to demonstrate that the other subsidiaries are discrete, autonomous business enterprises, their figures for property value, payroll and sales should be included in the apportionment formula for purposes of computing ERCA's tax.

The superior court stated in its memorandum of decision:

> The Department of Revenue has argued that a taxpayer seeking to utilize separate accounting has the burden of proving by clear and cogent evidence that it is not part of a unitary business. This court does not agree, and in its analysis does not place the taxpayer in the position of having to refute the department's finding of unity by clear and cogent evidence or any such higher degree of proof. The test this court has applied is whether the record as a whole contains substantial evidence from which the Department could have concluded that the business was unitary in nature.

The Supreme Court has ruled on several occasions that one who attacks an apportionment formula's application to a unitary business may do so only with a showing of clear and cogent evidence.[25] Indeed, this court applied the same burden to a taxpayer's challenge in *Sjong v. State, Department of Revenue,* 622 P.2d 967, 976 (Alaska 1981), *appeal dismissed,* 454 U.S. 1131, 102 S.Ct. 986, 71 L.Ed.2d 284 (1982). Thus, the superior court applied an improper burden of proof, in reaching the correct result. The error, however, must be considered harmless as correcting it would not change the result here and the trial court's ruling on the question of unity was legally correct. *See Morris v. Merchant,* 77 N.M. 411, 423 P.2d 606, 609 (N.M.1967); *H.T. Coker Construction Co. v. Whitfield Transportation, Inc.,* 85 N.M. 802, 518 P.2d 782, 785 (N.M. App.1974).

The judgment below is AFFIRMED.

---

**25.** *See Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 273–74, 98 S.Ct. 2340, 2344–45, 57 L.Ed.2d 197, 205 (1978); *Norfolk & W. Ry. Co. v. Missouri Tax Comm'n,* 390 U.S. 317, 326, 88 S.Ct. 995, 1001, 19 L.Ed.2d 1201, 1208 (1968); *Butler Bros. v. McColgan,* 315 U.S. 501, 509, 62 S.Ct. 701, 705, 86 L.Ed. 991, 997 (1942); *Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell,* 283 U.S. 123, 135, 51 S.Ct. 385, 389, 75 L.Ed. 879, 908 (1931).