*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LEO BLAS, | ) | |
| | ) | Supreme Court No. S-15154 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-12-08710 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, | ) | |
| DEPARTMENT OF LABOR AND | ) | No. 6937 – August 8, 2014 |
| WORKFORCE DEVELOPMENT, | ) | |
| DIVISION OF EMPLOYMENT | ) | |
| SECURITY, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Kevin M. Saxby, Judge.

Appearances: Leo Blas, pro se, Chugiak, Appellant. Aesha Pallesen, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.

I.    INTRODUCTION

The Department of Labor and Workforce Development, Division of Employment Security (the Division) determined that Leo Blas committed fraud when he

failed to report that he worked and traveled during weeks he claimed and received unemployment benefits. Blas presented no contrary evidence disputing these findings and this conclusion. We affirm the superior court's decision to uphold the Division's decision to reduce and deny Blas's receipt of unemployment benefits and to disqualify him from receiving benefits for 52 weeks.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Leo Blas is a highly educated accountant by profession; he also trained and worked as a life insurance agent. Blas collected unemployment benefits on and off for several years through the Division under the Alaska Employment Security Act.[1] On March 17, 2010, the Division's Benefit Payment Control Unit issued a determination of disqualification to Blas based on his failure to report work and travel while he was unemployed and receiving unemployment benefits. On February 16, 2011, a Division Appeal Tribunal partially reversed this determination, but held that "the facts reveal . . . [Blas withheld] material information about . . . one week of travel and two weeks of employment in November 2009" and "did so with the intent to receive unentitled benefits during those three weeks."[2]

This appeal concerns Blas's alleged failure to report work and travel in 2011 and 2012. Blas applied for unemployment benefits in 2011 for the weeks ending July 16, July 23, August 13, August 20, September 3, September 10, September 17, November 26, December 3, December 10, December 17, December 24, and

---

[1]    AS 23.20.005-.535.

[2]    This Division decision is not the subject of this appeal, but it is relevant to the Division's later decision that Blas committed fraud in knowingly applying for benefits for weeks that he worked and traveled, as well as the Division's later imposition of its most stringent 52-week penalty.

December 31. He also applied for benefits in 2012 for the weeks ending January 14 and January 21. During these weeks, Blas worked for Vision Alaska I, LLC, d/b/a Coastal Television Broadcasting Company, as a contract and then salaried employee, and then at Harley's Auto Park as a salaried employee. Although required to report travel to the Division when filing for benefits, Blas traveled to Moscow, Idaho and back to Anchorage on November 22-23, 2011, and did not report it.

### B.    Proceedings

The Division commenced two proceedings against Blas.[3]

### 1.    The first proceeding

On April 16, 2012, the Division's Benefit Payment Control Unit issued a notice of determination to Blas because employer records showed that he had earnings during 13 weeks he had received unemployment benefits.[4] This determination relied on a recorded, in-person interview with Blas where he admitted that he began working as an accounting clerk on a contract basis for Coastal Television in July 2011. Blas also admitted that he became a salaried employee of Coastal Television on July 28, 2011. Blas also agreed that he became a salaried employee of Harley's Auto Park on December 1, 2011. The determination stated: "You reviewed the . . . [previous] decision from the Appeals Tribunal . . . issued [February 16, 2011] in [your] case. You agreed that you were advised . . . that you must report your work and earnings whether you had

---

[3]    The superior court consolidated Blas's May 7, 2012 and June 19, 2012 administrative appeals.

[4]    The determination listed weeks in 2011 ending July 16, July 23, August 13, August 20, September 3, September 10, December 3, December 10, December 17, December 24, and December 31. It also listed weeks in 2012 ending January 14 and January 21.

been paid or not." Blas disputed that the previous February 16, 2011 decision of the Appeal Tribunal found him to have fraudulently applied for benefits in 2010.

When asked why he answered "no" to the question "Did you work for any employer?" on his online weekly certifications seeking unemployment benefits, Blas answered that he had received a letter from the Division that informed him he was owed Emergency Unemployment Compensation benefits for 2007, and he declined to report his work and earnings because he was underpaid and "the Division owed him money." Blas was then asked whether he knew that, by answering "no," he was certifying to false information. Blas stated that he was "not sure." Blas also stated that after the Division deducted the amount of the Emergency Unemployment Compensation benefits he was owed, he would be willing to make payments on the balance of unentitled benefits he received.

The Division's determination concluded that "[Blas] knew [he was] required to report [his] work and earnings and [he] failed to do so; misrepresentation has been established." The determination denied Blas benefits under AS 23.20.387[5] in 2011

---

[5] AS 23.20.387 provides:

(a) An insured worker is disqualified for benefits for the week with respect to which the false statement or misrepresentation was made and for an additional period of not less than six weeks or more than 52 weeks if the department determines that the insured worker has knowingly made a false statement or misrepresentation of a material fact or knowingly failed to report a material fact with intent to obtain or increase benefits under this chapter. The length of the additional disqualification and the beginning date of that disqualification shall be determined by the department according to the circumstances in each case.

(b) A person may not be disqualified from receiving benefits

(continued...)

and reduced his benefits under AS 23.20.360[6] in 2011 for the weeks ending August 13, August 20, September 3, September 10, December 3, December 10, December 17, December 24, December 31, and in 2012 for the weeks ending January 14 and January 21. It also denied Blas benefits under AS 23.20.387 in 2011 for the weeks ending July 16 and July 23. The determination found that, because

> [Blas] had [previously been] disqualified for misrepresentation within the past five (5) years (03/[17]/10), [he was] automatically DENIED future benefits under the provisions of AS 23.20.387 and 8 AAC 85.380(c)[7] for fifty-two (52) weeks beginning with the week ending 04/14/12 through 04/06/13.

---

[5]     (...continued)
under this section unless there is documented evidence that the person has made a false statement or a misrepresentation as to a material fact or has failed to disclose a material fact. Before a determination of fraudulent misrepresentation or nondisclosure may be made, there must be a preponderance of evidence of an intention to defraud, and the false statement or misrepresentation must be shown to be knowing and to involve a material fact.

[6]     AS 23.20.360, titled "Earnings deducted from weekly benefit amount," provides that "[t]he amount of benefits . . . payable to an insured worker for a week of unemployment shall be reduced by 75 percent of the wages payable to the insured worker for that week that are in excess of $50. However, the amount of benefits may not be reduced to zero."

[7]     8 Alaska Administrative Code (AAC) 85.380(c) (2014) provides: "The period of disqualification under AS 23.20.387 is 52 weeks if the claimant has been previously disqualified, within five years of the date of the determination, for making a false statement or misrepresentation, or failing to report a material fact."

Finally, the determination concluded that Blas was subject to any applicable overpayment debt and penalty amount under AS 23.20.390(a).[8] Blas appealed this determination.

In the Appeal Tribunal hearing, Blas did not dispute that he had worked for the weeks reported in the determination. In fact, he offered to "start making payments" and to "make a payment plan" for any excess he might owe. Instead, Blas argued that: (1) an administrative subpoena issued by the Division investigator in his case to access his bank records violated his right to privacy; (2) he was entitled to a calculation of damages he owed if he was being accused of fraud; (3) the previous February 16, 2011 Appeal Tribunal decision did not find that he had committed fraud in his 2010 application for benefits, and the Division erred in its 2012 determination by concluding that he had previously committed fraud when it automatically denied him 52 weeks of unemployment benefits; (4) the Division investigator called his last employer and caused him to lose his job; and (5) the Division did not provide him with discovery that he requested, including a recording of the phone call that caused his loss of employment, and a "second investigator's report" that Blas alleged aimed to uncover the circumstances of his termination.[9]

The Appeal Tribunal affirmed the Division's April 16, 2012 determination and denied Blas benefits in 2011 for the weeks ending July 16, July 23, August 13 though September 10, as well as December 3, 2011 through January 21, 2012 "and for

---

[8]    AS 23.20.390(a) provides: "An individual who receives a sum as benefits from the unemployment compensation fund when not entitled to it under this chapter is liable to the fund for the sum improperly paid to the individual."

[9]    Blas did not produce evidence to substantiate his allegations that a Division investigator caused him to lose his job, or that another investigator actually conducted an investigation of the first investigator in this case.

the future weeks of April 14, 2012 through April 6, 2013."[10]  The Tribunal also upheld the Division's determination of overpayment liability under AS 23.20.390(a), which included penalties.  It remanded to the Division the issue of Blas's eligibility for benefits during the week ending September 17, 2011, and ordered a recalculation of any penalty Blas owed.

Blas appealed the Appeal Tribunal's decision to the Commissioner.  The Commissioner issued a decision that affirmed the Appeal Tribunal in all respects, concluding that Blas "clearly committed fraud for a protracted period by giving false information on his claim certifications in spite of . . . [being] disqualified for failing to fill out the claim forms properly in a previous claim year," and that Blas gave "no explanation as to why he filed the claims" and instead "cavalierly gave testimony in the hearing to the effect that if he had been paid any weeks that he was not entitled to that he would pay it back."  The Commissioner noted that the Appeal Tribunal decision "did not rely on any bank records that the [D]ivision may have obtained by subpoena" and even if it did, "the [D]epartment is not in the position to interpret the constitutionality of statutes it is mandated to enforce."

### 2.    The second proceeding

On June 5, 2012, the Division's Benefit Payment Control Unit issued a second notice of determination to Blas, finding that Blas failed to report earnings for the week ending September 17, 2011, and failed to report travel for time he was in Idaho during the week ending November 26, 2011.[11]  The determination concluded that Blas

---

[10]    The determination alternatively reduced Blas's benefits pursuant to AS 23.20.360 for the weeks ending August 13, 2011 through September 10, 2011 and December 3, 2011 through January 21, 2012.

[11]    An initial determination was sent to Blas on May 17, 2012, but was
(continued...)

"made false statements with the intent to obtain benefits [he was] not entitled to receive," denied him benefits for the weeks ending September 17, 2011, and November 26, 2011, and again disqualified him from 52 weeks of future benefits.[12]

Blas appealed this determination to the Appeal Tribunal, and in the hearing testified that he did not remember if he worked on September 12 and 13, 2011. Blas stated that his failure to report may have been an "oversight," that he was uncertain whether he was actually paid for working those days, and that the whole system was not entirely clear to him. Blas also stated that he did not check the box "yes" that he traveled the week ending November 26, 2011 because "if I [said] yes, it looks like I traveled the whole week. I just traveled for one day."[13] He asserted that he had to fly to Idaho for

---

[11]  (...continued)
corrected and sent out as a redetermination on June 5, 2012. Blas technically appealed both "determinations," but the only difference between the two was the amount of wages the employer actually reported (in May it was $1,279.04, and in June it was $365.44).

[12]  The determination denied benefits under AS 23.20.360 and AS 23.20.387 for the week ending September 17, 2011. The determination also denied benefits under AS 23.20.378 (travel) and AS 23.20.387 for the week ending November 26, 2011. Alaska Statute 23.20.378(a) provides that "[a]n insured worker is entitled to receive . . . benefits for a week of unemployment if for that week the insured worker is . . . available for suitable work. An insured worker is not considered available for work unless registered for work in accordance with regulations adopted by the department." We have held that, to be available for suitable work, "the individual [must be] willing to work and . . . available to a substantial field of employment." *Lind v. Emp't Sec. Div., Dep't of Labor*, 608 P.2d 6, 8 (Alaska 1980). The Division considered Blas unavailable for work in Alaska due to his travel outside of the state.

[13]  Blas actually was in travel status two days. According to the record, Blas departed Anchorage on November 22, 2011 at 6:10 a.m. to travel to Idaho. He returned to Anchorage on November 23, 2011, at 10:47 p.m. An applicant for unemployment benefits is required to certify that he has not traveled because benefits are only owed if the applicant is available and able to work. *See* AS 23.20.378. If the applicant is in

(continued...)

a "personal matter." He claimed that he did not understand why the "one day" was "such a big deal" and questioned the hearing officer as to why the one day of travel mattered at all to his benefits determination for the week. Finally, Blas again protested the administrative subpoena process used by the Division investigator to access his bank account records.

The Appeal Tribunal affirmed the Division's denial of benefits under AS 23.20.387[14] and reset the 52 weeks of unemployment ineligibility for the week ending May 19, 2012. This ineligibility continued through May 11, 2013. Blas appealed to the Commissioner. The Commissioner affirmed the Appeal Tribunal in all respects, concluding that Blas

> clearly committed fraud for the two weeks in question by giving false information on his claim certifications in spite of the fact he was properly informed of the correct way to file claims via his claimant handbook and had been disqualified for failing to fill out the claim forms properly in a previous claim year.

Blas appealed to the superior court.

### 3. The superior court appeal

The superior court consolidated Blas's appeals. Blas renewed his arguments concerning the administrative subpoena process, as well as the investigator's conduct in allegedly calling his former employer and causing his termination.

---

[13] (...continued)
travel status unrelated to efforts seeking employment on a given day, he is not available and able to work, and therefore not eligible for unemployment benefits for that day.

[14] The Appeal Tribunal reduced Blas's benefits for the week ending September 17, 2011 under AS 23.20.360. That statute delineates how the Division deducts earnings from the applicant's weekly benefit amount. *See* AS 23.20.360. The Appeal Tribunal also denied Blas's benefits for the week ending November 26, 2011 under AS 23.20.378, because Blas traveled and was thus unavailable for suitable work.

The court upheld the Division's decisions. It concluded that: (1) Blas presented "no contrary evidence" to dispute the Division's findings that he had worked and traveled during certain weeks when he reported that he had not worked or traveled; (2) the Division "had a reasonable basis" to conclude that Blas committed fraud; and (3) the Division had not violated Blas's constitutional rights during its investigation or the administrative adjudication process.

Blas timely appeals and proceeds pro se.

## III.   STANDARD OF REVIEW

"When the superior court acts as an intermediate court of appeal from an agency decision we review the agency decision directly."[15] We review questions of fact in administrative decisions using the "substantial evidence" test.[16] "The scope of review for an agency's application of its own regulations to the facts is limited to whether the agency's decision was arbitrary, unreasonable, or an abuse of discretion."[17] "We apply the reasonable basis standard of review to questions of law involving agency expertise, and the substitution of judgment standard to questions outside the agency's expertise."[18] Finally, "[t]he interpretation of a statute . . . is a question of law to which we apply our

---

[15]    *Pyramid Printing Co. v. Alaska State Comm'n for Human Rights*, 153 P.3d 994, 997-98 (Alaska 2007) (citations omitted).

[16]    *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992).

[17]    *Griffiths v. Andy's Body & Frame, Inc.*, 165 P.3d 619, 623 (Alaska 2007) (quoting *Hodges v. Alaska Constructors, Inc.*, 957 P.2d 957, 960 (Alaska 1998)) (internal quotation marks omitted).

[18]    *Pyramid Printing Co.*, 153 P.3d at 998 (citing *Leigh v. Seekins Ford*, 136 P.3d 214, 216 (Alaska 2006)).

independent judgment,"[19] "taking into account the plain meaning and purpose of the law as well as the intent of the drafters."[20]

## IV. DISCUSSION

### A. The Division's Determination That Blas Failed To Report Work Is Supported By Substantial Evidence.

A determination of fact by an agency will stand if it is supported by substantial evidence,[21] which is "such relevant evidence as a reasonable mind might accept as adequate to support [the agency's] conclusion" in light of the whole record.[22] Under the substantial evidence standard "it is 'not the function of the (reviewing) court to reweigh the evidence or choose between competing inferences, but only to determine whether such evidence exists.' "[23]

Whether Blas failed to report work is a question of fact.[24]  The relevant

---

[19]     *West v. State*, 248 P.3d 689, 694 (Alaska 2010) (citing *Parson v. State, Dep't of Revenue, Alaska Hous. Fin. Corp.*, 189 P.3d 1032, 1036 (Alaska 2008)).

[20]     *Native Vill. of Elim v. State*, 990 P.2d 1, 5 (Alaska 1999) (citing *Alaska Wildlife Alliance v. Rue*, 948 P.2d 976, 979 (Alaska 1997)).

[21]     *Button*, 208 P.3d at 200.

[22]     *Alaskan Crude Corp. v. State, Alaska Oil & Gas Conservation Comm'n*, 309 P.3d 1249, 1254 (Alaska 2013) (alteration in original) (quoting *Lopez v. Adm'r, Pub. Emps.' Ret. Sys.*, 20 P.3d 568, 570 (Alaska 2001)).

[23]     *State, Dep't of Labor v. Boucher*, 581 P.2d 660, 662 (Alaska 1978) (alteration in original) (quoting *Interior Paint Co. v. Rodgers*, 522 P.2d 164, 170 (Alaska 1974)).

[24]     *See, e.g.*, *Calvert v. State, Dep't of Labor & Workforce Dev., Emp't Sec. Div.*, 251 P.3d 990, 998 (Alaska 2011) (holding that whether an employee voluntarily quit suitable work for good cause is a question of fact); *Smith v. Sampson*, 816 P.2d 902, 904 (Alaska 1991) (holding that whether employee was dismissed from his employment
(continued...)

evidence to support this factual finding was produced at both Appeal Tribunal hearings as exhibits in the form of online and telephonic forms that Blas filled out for unemployment for weeks he was employed. Payment invoices sent by Blas, payment receipt stubs, and copies of paychecks that corresponded to the weeks Blas applied for unemployment also appeared in the agency record as exhibits. Also in evidence were Blas's admissions: he did not dispute that he had worked during the weeks in question; instead Blas repeatedly demanded an accounting of how much he owed, so that he could "start making payments" or "make a payment plan" for any excess he might owe. The Commissioner affirmed both Appeal Tribunal decisions based on this evidence and Blas's failure to rebut it.

Because there is ample relevant evidence to support the Division's finding that Blas failed to report work during the weeks in question, we affirm the agency's factual finding.

---

[24]    (...continued)
for misconduct is a question of fact). "Generally, facts are those findings that respond to inquiries about who, when, what, and where. For example, whether a defendant drove her car through a red light is considered a question of fact." Timothy P. O'Neill & Susan L. Brody, *Taking Standards of Appellate Review Seriously: A Proposal to Amend Rule 341*, 83 ILL. B.J. 512, 514 (1995) (footnotes omitted) (internal quotation marks omitted). "An 'ultimate' fact is different from an 'historical' fact. The question of whether a traffic light was red is a question of historical fact. The pertinent historical facts may lead to the 'ultimate' factual conclusion that defendant was 'negligent.' " *Id*. at 514 n.13 (citation omitted).

**B.** **The Division's Determination That Blas Failed To Report Travel Was Supported By Substantial Evidence, And The Division Did Not Abuse Its Discretion When It Found Blas Was Not Available For Suitable Work.**

Whether Blas failed to report his travel is a question of fact.[25] We review an agency's application of its own regulations to the facts to determine whether the agency's decision was "arbitrary, unreasonable, or an abuse of discretion."[26]

According to the record, Blas departed Anchorage on November 22, 2011 at 6:10 a.m. to travel to Idaho on personal business. He returned to Anchorage on November 23, 2011, at 10:47 p.m. The Appeal Tribunal found that Blas "traveled away from his residence during his customary work week for purposes unrelated to obtaining employment, and he did not seek work in the areas he traveled[, namely, Idaho]," in violation of AS 23.20.378 and 8 AAC 85.353. The Appeal Tribunal concluded that Blas "[did] not meet the available criteria of the regulation during the week of his travel." The Commissioner affirmed these findings and conclusions.

Blas argues that "the partial day [of] travel . . . did not interfere" with his local job search "in any single 24 hour calendar day period" and that he was "present in Alaska every single calendar day of that week, and pursued employment locally by phone, online and other methods."[27]

Alaska Statute 23.20.378(a) provides that "[a]n insured worker is entitled to receive . . . benefits for a week of unemployment if for that week the insured worker

---

[25]     *See* O'Neill & Brody, *supra* note 24, at 514.

[26]     *Griffiths v. Andy's Body & Frame, Inc.*, 165 P.3d 619, 623 (Alaska 2007) (internal quotation marks omitted).

[27]     As explained in note 13, Blas was in travel status two days, departing Anchorage at 6:10 a.m. on November 22, 2011, and returning to Anchorage at 10:47 p.m. on November 23, 2011.

is . . . available for suitable work. An insured worker is not considered available for work unless registered for work in accordance with regulations adopted by the department." 8 AAC 85.353 governs a claimant's availability for suitable work as it relates to travel claims. The requirements of that regulation "apply to *any period* during which a claimant travels outside the area in which the claimant resides"[28] subject to exceptions for conditions not applicable here,[29] or if the applicant must travel for approved training.[30] As relevant to Blas, the regulation provides that "[a] claimant is available for work each week while traveling only if the claimant is traveling to . . . search for work and is legally eligible to accept work in the area of travel."[31]

Here, Blas admitted in the June 2012 Tribunal Appeal hearing that he did

---

[28]     8 AAC 85.353(a) (emphasis added).

[29]     Those exceptions are where the insured worker:

(A) is ill or disabled;

(B) is traveling to obtain medical services that are not available in the area in which the insured worker resides, or, if a physician determines it is necessary, the insured worker is accompanying a spouse or dependent who is traveling to obtain medical services;

(C) resides in the state and is noncommercially hunting or fishing for personal survival or the survival of dependents;

(D) is serving as a prospective or impaneled juror in a court; or

(E) is attending the funeral of an immediate family member for a period of no longer than seven days . . . .

AS 23.20.378(a)(1).

[30]     8 AAC 85.353(a).

[31]     8 AAC 85.353(b)(1).

not search for work during the period he traveled. Blas traveled over November 22 and 23, 2011 — a Tuesday and a Wednesday in the middle of the standard work week. There is substantial evidence to support the Division's finding that Blas did not report his travel, and the Division did not abuse its discretion in applying its regulations to this fact and concluding that Blas was not available for suitable work when Blas was outside of Alaska for two work days. We thus affirm the Division's denial of benefits to Blas under AS 23.20.378 for the calendar week ending November 26, 2011, because Blas was not available for suitable work that week due to travel.

## C. The Division Did Not Err When It Concluded That Blas Committed Fraud.

"The substitution of judgment standard is applied where the questions of law presented do not involve agency expertise or where the agency's specialized knowledge and experience would not be particularly probative as to the meaning of the statute."[32] "The standard is appropriate . . . where the case concerns statutory interpretation or other analysis of legal relationships about which the courts have specialized knowledge and experience."[33] "Application of this standard permits a reviewing court to substitute its own judgment for that of the agency even if the agency's decision had a reasonable basis in law."[34] Just as the workers' compensation statutes do

---

[32] *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987) (citing *Matanuska-Susitna Bor. v. Hammond*, 726 P.2d 166, 175 (Alaska 1986); *Glacier State Telephone v. Alaska Pub. Utils. Comm'n*, 724 P.2d 1187, 1189 n.1 (Alaska 1986))).

[33] *Id*. (quoting *Earth Res. Co. of Alaska v. State, Dep't of Revenue*, 665 P.2d 960, 965 (Alaska 1983)) (internal quotation marks omitted).

[34] *Id*. (citing *Earth Res. Co. of Alaska*, 665 P.2d at 965).

not "give a context-specific definition of 'knowingly,' "[35] the Employment Security Act does not provide a definition of this word.[36] It thus falls to us to interpret the terms "knowing" or "knowingly" in AS 23.20.387.[37]

The Division concluded that Blas "clearly committed fraud . . . by giving false information on his claim certifications in spite of the fact [that] he was properly informed of the correct way to file claims via his claimant handbook and had been disqualified for failing to fill out the claim forms properly in a previous claim year." Alaska Statute 23.20.387(a) gives the Division authority to disqualify a claimant from receiving benefits based on misrepresentation for up to 52 weeks when the claimant "knowingly [makes] a false statement or misrepresentation of a material fact or knowingly [fails] to report a material fact with intent to obtain or increase benefits under this chapter." The statute does not define the term "knowingly"; however, subsection (b) cautions that the Division must have "documented evidence" demonstrating a "preponderance of evidence of an intention to defraud, and the false statement or misrepresentation must be shown to be knowing and to involve a material fact."[38]

Blas does not directly challenge the Division's finding that he committed fraud, and nowhere in his briefing does Blas argue that he did not intend to apply for benefits during weeks the Division claims Blas actually worked.[39] Instead, Blas argues

---

[35]     *ARCTEC Servs. v. Cummings*, 295 P.3d 916, 922 (Alaska 2013) (citing AS 23.30.395).

[36]     *See* AS 23.20.520 (defining the terms found in the Act).

[37]     *See ARCTEC Servs.*, 295 P.3d at 920-21.

[38]     AS 23.20.387(b).

[39]     Blas characterizes his weekly benefit certification where he reported he did
(continued...)

that his appeal should automatically stay the Division's enforcement of his disqualification from receiving 52 weeks of unemployment benefits, because the matter is still being contested, and because the amount of unemployment benefits the Division denied him far outweighs the amount of the Division's "overpayment" to him by "thousands of dollars."

The Division contends that it had a reasonable basis to conclude that Blas's misrepresentations were "knowing" and intentional because: (1) Blas received and read the Unemployment Insurance Claimant Handbook, which explained how to properly report one's work and earnings; (2) the questions to which Blas responded "no" when certifying his employment status were simple and unambiguous — allowing little room for misunderstanding; (3) Blas participated in the prior February 2011 appeal before the Appeal Tribunal, and his obligation to accurately report was "thoroughly explained to him at that time"; and (4) even after Blas was paid unemployment benefits, he never informed the Division or tried to correct his earlier "misrepresentation."

In order to determine whether Blas was "knowingly" deceptive in his reporting, we must interpret the fraud provision found in AS 23.20.387. This requires that we examine the language of the statute "construed in light of its purpose."[40] We aim to give effect to the legislature's intent while taking into consideration "the meaning the

---

[39]     (...continued)
not travel as a "misstatement . . . related to travel during a week of unemployment." Blas essentially takes issue with the term "fraud" because he believes his material misrepresentations are minor compared to the penalties the Division imposed on him.

[40]     *Beck v. State, Dep't. of Transp. & Pub. Facilities*, 837 P.2d 105, 116-17 (Alaska 1992) (citing *Vail v. Coffman Eng'rs, Inc.*, 778 P.2d 211, 213 (Alaska 1989)).

statutory language conveys to others" — the plain meaning of the statute.[41] We use a sliding scale on matters of statutory interpretation: "the plainer the language of the statute, the more convincing contrary legislative history must be."[42] We give weight to an agency's interpretation when such interpretation has been of a longstanding and continuous nature.[43]

The plain language of AS 23.20.387 contains the following mental state requirements: (1) the claimant must "knowingly" make a false statement or fail to report (2) with "intent to obtain or increase benefits"; there must be documentary evidence of (3) an "intention to defraud" by a preponderance of the evidence; and (4) the false statement must be shown to be "knowing" and involve a material fact.[44] In the workers' compensation benefits case *ARCTEC Services v. Cummings*, we concluded "that 'knowingly,' for purposes of fraud claims under AS 23.30.250(b), requires the subjective

---

[41] *Alyeska Pipeline Serv. Co. v. DeShong*, 77 P.3d 1227, 1234 (Alaska 2003) (quoting *Muller v. BP Exploration (Alaska) Inc.*, 923 P.2d 783, 787 (Alaska 1996)).

[42] *Marathon Oil Co. v. State, Dep't of Natural Res.*, 254 P.3d 1078, 1082 (Alaska 2011) (quoting *Alaskans For Efficient Gov't, Inc. v. Knowles*, 91 P.3d 273, 275 (Alaska 2004)) (alteration and internal quotation marks omitted).

[43] *See Bartley v. State, Dep't of Admin., Teacher's Ret. Bd.*, 110 P.3d 1254, 1261 (Alaska 2005) (finding the agency interpretation guiding when longstanding); *Storrs v. State Med. Bd.*, 664 P.2d 547, 552 (Alaska 1983) (holding that a "statutory construction adopted by those responsible for administering a statute should not be overruled in the absence of 'weighty reasons' " (quoting *Kelly v. Zamarello*, 486 P.2d 906, 910-11 (Alaska 1971)); *Nat'l Bank of Alaska v. State, Dep't of Revenue*, 642 P.2d 811, 815-16 (Alaska 1982) (reasoning that courts should give weight under independent judgment standard to longstanding agency interpretation); 2B NORMAN J. SINGER, SUTHERLAND ON STATUTES AND STATUTORY CONSTRUCTION § 49:05, at 52-53 (6th ed. 2000) (noting rule that courts should give weight to longstanding statutory construction).

[44] AS 23.20.387(a)-(b).

intent to defraud."[45] We reasoned that subsection (a) of that statute imposed criminal liability; thus we construed "knowingly" in accordance with the criminal law definition of the term found in AS 11.81.900(a)(2).[46] We ultimately determined that "knowingly" in AS 23.30.250(b) also required subjective intent, despite the fact that subsection (b) merely imposed civil penalties.[47]

Alaska Statute 23.20.387(a) disqualifies a claimant from receiving unemployment benefits for a period from six to 52 weeks, with the length of the disqualification and its start date "determined by the department according to the circumstances in each case."[48] The statute's earliest iteration in 1955 suggests that culpability required a subjective intent to defraud: the claimant was automatically disqualified for 26 weeks if "he . . . made a false statement or representation of a material fact *knowing it to be false.*"[49] In 1980 the statute was amended to give the Division

---

[45] 295 P.3d 916, 920 (Alaska 2013).

[46] *Id*. at 922. Alaska Statute 11.81.900(a)(2) provides that an individual acts

"knowingly" with respect to conduct or to a circumstance . . . when the person is aware that the conduct is of that nature or that the circumstance exists; when knowledge of the existence of a particular fact is an element of an offense, that knowledge is established if a person is aware of a substantial probability of its existence, unless the person actually believes it does not exist; a person who is unaware of conduct or a circumstance of which the person would have been aware had that person not been intoxicated acts knowingly with respect to that conduct or circumstance.

[47] *ARCTEC Servs.*, 295 P.3d at 923.

[48] AS 23.20.387(a).

[49] Ch. 5, § 741(k), ESLA 1955.

discretionary latitude to "vary the length of disqualification from 6-52 weeks depending on the circumstances"[50] with the goal of "main[taining] . . . a solvent trust fund"[51] and "strengthening [the] qualifications for [receipt of unemployment] benefits."[52] But the term "knowingly" was preserved in AS 23.20.387(a)[53] and the subjective mental state underscored in subsection (b): "there must be evidence of a[] [person's] *intention to defraud*, and the act must be *knowing*."[54]

---

[50] Sen. Finance Comm., Section by Section Analysis of Proposed H.B. 214, 11th Leg., 2d Sess. at 6 (1980), *available at* Alaska Leg. Microfiche Collection No. 1057.

[51] Letter from Jay S. Hammond, Governor, to Terry Gardiner, Speaker of the House on H.B. 214, 11th Leg., 1st Sess. (Feb. 13, 1979), *available at* Alaska Leg. Microfiche Collection No. 1057.

[52] *Id*.

[53] Sen. Finance Comm., Proposed Language of H.B. 214, 11th Leg., 2d Sess. at 12 (1980), *available at* Alaska Leg. Microfiche Collection No. 1057. We observe that while the legislative history of AS 23.20.387 is sparse, the proposed language of this subsection in 1980 has remained virtually unchanged for over 30 years. In 1980 the proposed language of AS 23.20.387(a) provided: "An individual is disqualified for benefits . . . if the department finds that the individual has knowingly made a false statement or misrepresentation as to a material fact or knowingly failed to report a material fact with intent to obtain or increase any benefits under this chapter." Presently, subsection (a) provides: "An insured worker is disqualified for benefits . . . if the department determines that the insured worker has knowingly made a false statement or misrepresentation of a material fact or knowingly failed to report a material fact with intent to obtain or increase benefits under this chapter."

[54] *Id*. (emphasis added). The language of proposed subsection (b) in 1980 provided: "There must be evidence of an intention to defraud, and the act must be knowing and must involve material facts before a determination of fraudulent misrepresentation or nondisclosure may be made." The present statutory subsection is nearly identical and provides: "Before a determination of fraudulent misrepresentation

(continued...)

We conclude that the statute's legislative history supports our interpretation of "knowingly" used in AS 23.20.387: the Division must prove that the insured worker had a subjective intent to defraud before it can exercise its discretionary authority to disqualify him from receiving benefits for up to a calendar year. Here, circumstantial evidence proved that Blas had the requisite subjective intent.[55] The Division made findings that: (1) Blas "acknowledged [that] he had received and read a claimant information handbook[,] which explain[ed] the need to report on weekly certifications any work and earnings and travel," and he "was properly informed of the correct way to file claims via his claimant handbook"; (2) the questions to which Blas responded "no" (e.g., "Did you work for any employers?" and "Were you self-employed?" and "Did you travel?") were simple and unambiguous, allowing no room for misunderstanding;[56] and

---

[54]    (...continued)
or nondisclosure may be made, there must be a preponderance of evidence of an intention to defraud, and the false statement or misrepresentation must be shown to be knowing and to involve a material fact."

Again, we observe that while "the plain meaning of a statute does not always control its interpretation . . . [,] under Alaska's sliding-scale approach to statutory interpretation, 'the plainer the language of the statute, the more convincing contrary legislative history must be.' " *Bartley v. State, Dep't of Admin., Teacher's Ret. Bd.*, 110 P.3d 1254, 1258 (Alaska 2005). Here, we find no legislative history contrary to the plain meaning of "knowingly" found in AS 23.20.387(a), *see id.*, and our prior interpretation of a different but analogous self-reporting fraud provision in the workers' compensation context reinforces the meaning we ascribe to this statutory term, namely, the requirement that the insured worker possess a subjective intent to defraud. *See supra* note 45.

[55]    *See, e.g.*, *First Nat. Bank of Fairbanks v. Enzler*, 537 P.2d 517, 521-22 (Alaska 1975) (reasoning that an intent to defraud may be proved by circumstantial evidence).

[56]    *Cf. ARCTEC Servs. v. Cummings*, 295 P.3d 916, 923 (Alaska 2013) (discussing and affirming the Workers Compensation Appeals Board's credibility
(continued...)

(3) Blas participated in the prior February 2011 appeal before the Appeal Tribunal about his failure to report work and travel, and his obligation to accurately report was explained to him at that time.

This evidence constitutes a "preponderance of evidence of an intention to defraud"[57] by way of knowing, false statements involving material facts concerning Blas's employment and travel status. Blas presented no contrary evidence to show that he did not work or did not understand that he was required to report his employment, nor did he dispute that he certified his eligibility for unemployment benefits on days that he worked and traveled. Quite the contrary, throughout the case Blas justified his conduct by stating that "the Division owed [him] money," that he was ready to "start making payments" for any excess he might owe, and that his personal travel was not "such a big deal." Given this evidence in support of the Division's fraud determination and Blas's failure to rebut it, we uphold the Division's determination of fraud under AS 23.20.387, and we affirm its denial of benefits for the benefit weeks in question.[58]

---

[56]     (...continued)
determination where the claimant was confused about having to report her volunteering as employment); *Shehata v. Salvation Army*, 225 P.3d 1106, 1111, 1115-17 (Alaska 2010) (holding that the workers' compensation statute does not authorize the Board to order the reimbursement of paid benefits based on silence, nondisclosure, or omissions, where the injured worker worked part-time for five weeks, but was unaware that he was committing fraud).

[57]     *See* AS 23.20.387(b).

[58]     Blas also frames his appeal as a constitutional challenge to: (1) the Division's use of an administrative subpoena to access his bank records; (2) the Division investigator's alleged call to his last employer that caused his termination; (3) the Division's "illegal seizure" of his annual Permanent Fund Dividend check; and (4) the Division's alleged failure to provide him with the discovery he requested. But Blas admitted that he worked and traveled on days that he reported he did not, and has at no

(continued...)

## V.    CONCLUSION

We AFFIRM the Division's decisions.

---

**58**      (...continued)
point in this case submitted evidence to the contrary.  Thus, this is essentially an appeal of two administrative determinations on uncontested facts.

"It is well-settled that it is an appellant's responsibility to present this court with a record sufficient to allow meaningful review of his or her claims."  *Walden v. Dep't of Transp.*, 27 P.3d 297, 303 (Alaska 2001) (citing *Adrian v. Adrian*, 838 P.2d 808, 811 n.5 (Alaska 1992)).  In the proceedings before the Division, Blas could have attested to facts in the form of an affidavit or engaged in other forms of discovery, despite his claim that the Division denied him the documents that he requested.  Blas understood basic evidentiary requirements, stating in his opening brief with us that he will bring a "motion to compel [against] the state to produce [documents] when appropriate."  Because Blas has not in any meaningful way substantiated his allegations concerning his claims of improper use of an agency subpoena and improper investigation and contact with a prior employer, and because Blas has not contested the operative facts underlying the administrative determinations, we decline to reach the merits of any constitutional challenge to the agency's investigative or adjudicatory process in this administrative appeal.